IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | | |
|---|---|---|
| KARRIE POWELL, | ) | Civil Action No. 2:25-cv-12351-BHH-MHC |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| V. | ) | **COMPLAINT** |
| | ) | (Jury Trial Demanded) |
| MEDICAL UNIVERSITY HOSPITAL AUTHORITY, WALTER BENNETT, III, | ) ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## I.
## NATURE OF CLAIMS

1. This is an action arising out of the unlawful employment practices of the Defendants. Plaintiff seeks relief for Defendants' discrimination and harassment pursuant to the provisions of Title VII of the Civil Rights Act of 1964 (Title VII), 42 U.S.C. §§2000e *et seq.*

2. This action also seeks damages for the defamation of the Plaintiff by the Defendants under South Carolina law.

3. Plaintiff also brings this action for unpaid wages/bonuses under the South Carolina Payment of Wages Act, S.C. Code Ann. § 41-10-10, *et seq*.

## II.
## JURISDICTION AND VENUE

4. The jurisdiction of this Court is invoked pursuant to 42 U.S.C. §2000e-2 and 28 U.S.C. §1331 conferring original jurisdiction upon this Court of any civil action arising under the laws of the United States.

1

5. Defendant MUHA has its principal place of business in Charleston County, South Carolina. The venue of this Court is therefore proper under 28 U.S.C. §1391.

6. In addition, this Court has supplemental jurisdiction, pursuant to 28 U.S.C. §1367, over Plaintiff's pendent claims for defamation and wage payment violations, which are brought pursuant to the statutory and common laws of the State of South Carolina, because those claims arise out of the same transaction or occurrences as the federal claims alleged herein.

## III.

## PARTIES

7. The Plaintiff, Karrie Powell is a citizen to the United States and a resident of Dorchester County, South Carolina. Plaintiff is White/Caucasian.

8. The Medical University Hospital Authority (hereinafter "MUHA" or "Defendant MUHA") is a public body corporate and politic and is organized and exists pursuant to S.C. Code Ann. §59-123-60. MUHA has its principal place of business in Charleston County, South Carolina, but also operates the hospital in Orangeburg County, South Carolina where Plaintiff worked known as MUSC Health-Orangeburg. Defendant MUHA is an employer within the meaning of Title VII.

9. Upon information and belief, Defendant Walter Bennett, III (hereinafter "Defendant Bennett") is a citizen of the United States and a resident of Spartanburg County, South Carolina. Mr. Bennett is Black/African American.

## IV.

## CONDITIONS PRECEDENT

10. The Plaintiff timely filed an administrative charge with the Equal Opportunity Commission (EEOC), the Notice of Right to Sue was received by the Plaintiff no earlier than June 26, 2025, and this Complaint has been timely filed within ninety days of said receipt by Plaintiff.

11. Plaintiff has thus complied with all conditions precedent for filing suit and now timely files her Complaint.

## IV.

## **STATEMENT OF FACTS**

12. Plaintiff Karrie Powell was employed by Defendant MUHA at MUSC Health-Orangeburg's Hospital at the time of her abrupt termination from employment on April 12, 2024.

13. Since 2002, Ms. Powell's lengthy career as a professional registered nurse has been marked by her notable achievements and upward trajectory into nurse leadership positions. After her initial nursing education and employment in South Carolina, the Plaintiff worked in progressive leadership positions for Kaiser Permanente in California for over eight years, ending in hospital administration. Ms. Powell returned to South Carolina in 2017 to be near family and was hired as the Chief Nursing Officer (CNO) at Hospital Corporation of America's Summerville Medical Center.

14. After four years at Summerville, the Plaintiff accepted a position as Vice-President of Patient Care and Chief Nursing Officer at the Regional Medical Center of Orangeburg and Calhoun Counties (hereinafter "RMC" or 'the Hospital") in March 2021. This new position would bring challenges that were unimaginable even to a CNO as experienced as Ms. Powell.

15. From the beginning of her employment at RMC, the Plaintiff's leadership directives were openly resented by long-time employees of RMC. Many healthcare professionals, including several of the nurse leadership under the Plaintiff's direct supervision, were accustomed to operating the small hospital in a relaxed manner, irrespective of proper pay practices, applicable laws and, most concerning of all, required safety procedures. Ms. Powell's efforts to establish fiscally responsible and lawful pay practices, accountable employment practices and compliant

3

safety procedures were met with recalcitrance by many employees and with downright hostility by many other employees.

16. In response to these attitudes, Ms. Powell provided educational opportunities to educate her subordinates regarding the appropriate, lawful and fiscally responsible manner of nursing leadership. Despite these efforts, the Plaintiff continued to be met with argumentative and insubordinate behavior from her subordinates.

17. In addition to these problems, Ms. Powell dealt continually with her subordinates' pattern of habitual absenteeism, often highlighted by their hostility toward taking call during nights or weekends. Plaintiff's concern about her subordinates' failure to attend work regularly and dependably was based upon the absolute necessity of safe staffing requirements for the Hospital.

18. The recalcitrance and hostility that the Plaintiff encountered at RMC continued throughout her two-year employment with RMC and her later one-year employment with MUHA.

19. On March 1, 2023, the Medical University of South Carolina ("MUSC") entered into a long-term lease and operations agreement with RMC bringing it into the MUSC-Health system and renaming the hospital MUSC Health-Orangeburg (hereinafter "MUSC-Orangeburg" or 'the Hospital"). As a state agency created in 2000, MUHA operates the hospitals and clinics of the MUSC Health system. Continuing in her same position as CNO, the Plaintiff became a MUHA employee as of March 1, 2023.

20. On or about April 20, 2023, Defendant Bennett was hired as the new Chief Executive Officer of MUSC-Orangeburg. Defendant replaced David Southerland, who is White. Defendant Bennett joined the executive team at the Orangeburg hospital, which was weighted heavily with Black employees. The Chief Operating Officer at the time, Sabrina Robinson, is Black. Sem Ganthier who became the Assistant Vice-President of Operations is Black, as is the Assistant

Vice-President of Finance, Anthony Sands. Although MUSC-Orangeburg was often without a Chief Medical Officer (CMO), the CMO eventually hired by Mr. Bennett, Carnell Cooper, is Black.

21. The Plaintiff was subjected to disparate treatment because of her race by Defendant Bennett, who displayed preferential treatment toward Black employees. As Chief Nursing Officer at the hospital, the Plaintiff's responsibilities were extensive and included nursing staffing and related issues in many departments. Despite her numerous areas of responsibility, Defendant Bennett expected the Plaintiff to assume some of the responsibilities of Mr. Ganthier, when he was unable or unwilling to perform them. For example, when Mr. Ganthier failed to take the lead in replacing old and faulty equipment that presented patient safety issues, the Plaintiff became responsible for this operational task, one that Mr. Ganthier should have performed.

22. Defendant Bennett's preferential treatment toward Black employees was similarly displayed when he directed the re-hire of a Black employee who had been terminated for performance and behavioral issues. After his termination from his position as an RN, this former employee sought out Mr. Bennett, who championed his re-hire. The reinstatement of the RN was accomplished by Mr. Bennett, despite Ms. Powell's voiced concerns about his professional abilities and behavior.

23. As Chief Nursing Officer, the proper staffing of nurse professionals in the Hospital was central to Ms. Powell's job. When the Plaintiff first became employed at the Hospital, its staffing included a very large contingent of traveling nurses, numbering more than 125 nurses. Due to the Plaintiff's efforts in reducing this extraordinary expense to the Hospital when it was RMC, that number had dwindled to the mid-20s in two years. Under Mr. Bennett's tenure,

however, when the Plaintiff sought to employ necessary staff to meet core requirements and generally improve patient services and safety, her requests were often denied by him.

24. In order to effectuate the necessary hiring, Ms. Powell was forced to rely upon Charles Reeves. Mr. Reeves had been a co-worker of Ms. Powell at Summerville Medical Center, and she had hired him as her direct report as Director of Trauma and Nursing Operations at MUSC-Orangeburg. In what became a rather ludicrous scenario, the Plaintiff would ask Mr. Reeves, who is Black, if he would seek the approval of Mr. Bennett to hire her selections, rather than seeking approval from Mr. Bennett herself. Mr. Bennett more easily acceded to the requests by Mr. Reeves, thus demonstrating Mr. Bennett's partiality toward Black employees.

25. Ms. Powell's largely ignored pleas for adequate staffing included her requests for educators who would engage in mandatory training for nurses at MUSC-Orangeburg. Lack of mandatory training in the physician's area had, in fact, directly contributed to an adverse sentinel event in the obstetrical-gynecological operating room. Due to a lack of training in the medication dispensing cart, a physician was unable to access necessary medications during surgery.

26. While employed by MUHA, the Plaintiff performed her work in an exemplary manner. Due to her leadership, the Hospital was elevated from its usual "F" grade to a "C" grade in the Leapfrog Safety Grade system. The Leapfrog Safety Grades system is the gold standard measure of patient safety in the United States. After MUSC's lease acquisition of RMC, Ms. Powell also led the implementation of major electronic conversions, such as EPIC EMR, the electronic medical records conversion, the Axiom conversion for financial visibility for all nursing departments, the Press-Ganey patient experience portal required for CMS reimbursements, the Shield safety reporting plat conversion and others. She also implemented MUSC's virtual nursing program hosted by VirtuAlly with no onsite educators for support. In the frequent

absence of a CMO, Ms. Powell was often required to assist in dealing with issues regarding the physicians in the Hospital.

27. The Plaintiff did not receive any written performance reviews from Defendant Bennett while employed by MUHA, although she was scheduled to receive one in September. She never received any written discipline regarding her performance. She was never placed on a performance improvement plan, a practice widely used and promoted within the MUSC Health System for employees with performance issues. In fact, Mr. Bennett rewarded her demonstrably good performance by placing her into a MUHA/MUSC executive bonus plan in early 2024.

28. On April 12, 2024, Ms. Powell worked at the Hospital most of the day. She sought Mr. Bennett's advice about a personnel matter, but was unable to interact with him due to his absence from the Hospital. Later, without consulting her, Mr. Bennett placed a 4:00 p.m. Teams meeting on her calendar with the topic of "Care Team Member Follow Up." Assuming the meeting was a follow up on the personnel matter for which she had previously sought his advice, Ms. Powell nevertheless declined the meeting due to a preexisting commitment out of the office.

29. Shortly after 4:00 p.m. that day, while driving on Interstate 26, Ms. Powell joined the Teams meeting by phone, anticipating a discussion regarding the personnel matter. Momentarily disconnected by Ms. Powell's distraction due to an accident on I-26, she reconnected with him shortly thereafter. Knowing full well that she was driving in her car, Mr. Bennett proceeded to tell her that she was being discharged from her position as of that day, April 12. By way of explanation when she asked, and after she reminded him that he had added her to the executive bonus plan, Mr. Bennett stated the reason for her termination was because she was "not a fit for this role."

30. During their brief conversation on April 12, the Plaintiff asked Mr. Bennett if she could work in another role for the Defendant. Mr. Bennett replied that the Plaintiff was welcome to look on the internal job board for other positions within the MUSC Health System, but she could not continue at MUSC Orangeburg. Mr. Bennett asked the Plaintiff to return Hospital property, including her computer and cell phone. He further advised her that she would be receiving a severance agreement to sign which would grant her five weeks of salary. She received a copy of this agreement on Monday, April 15 via email from Mr. Bennett.

31. On May 1, 2024, Mr. Bennett sent out an email to all of the Hospital's employees, staff and physicians. This email read, in part, as follows:

> Dear MUSC Health Orangeburg Care Team,
>
> I want to inform you that Karrie Powell, MSN, RN, NEA-BC has left her role as Chief Nursing Officer of MUSC Health Orangeburg. We're truly thankful for Karrie's hard work and dedication during her time with us. Karrie made a significant impact on patients, our community and our care team. Our senior leadership team is committed to maintaining a high standard of care at MUSC Health Orangeburg. In the interim, Karrie's direct reports will report to other hospital leaders and a formal plan will be shared as details become available.
>
> \*\*\*
>
> Walter N. Bennett, III, FACHE

32. Despite her announced termination by Mr. Bennett effective April 12, and his May 1 email memorializing her unexplained, unanticipated departure from the Hospital, the Defendants sent her a letter, dated June 24th, terminating her employment, effective June 13, 2024. More than two months after her first announced termination, the Defendants had assembled a litany of allegations against the Plaintiff, charging her with conduct in violation of MUSC Health Standard of Professional Behavior relating to a myriad of issues: compliance, quality, safety, retaliation against her subordinates, exceeding her scope of authority, failing to communicate in a

professional manner and failure to provide meaningful direction to nursing staff. None of these were communicated to the Plaintiff when Mr. Bennett attributed her abrupt dismissal to her not being a good fit.

33. After a "national search" for Plaintiff's replacement, Defendants promoted Christina Smith, then a current employee who is Black, to the position of CNO as the replacement for Plaintiff.

<u>**FIRST CAUSE OF ACTION**</u>
<u>**TITLE VII**</u>
**Race Discrimination**

34. Plaintiff re-alleges and incorporates each and every allegation set forth above as if repeated verbatim.

35. Defendant MUHA is an employer subject to Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C §2000e *et seq*.

36. Plaintiff is White and is therefore a member of a protected class.

37. Plaintiff was performing her duties in a satisfactory manner to the legitimate expectations of the Defendant.

38. Plaintiff' termination on April 12, 2024 was an adverse action accomplished by the Defendant MUHA, acting by its agent Defendant Bennett, a Black male, who gave as the reason for her termination that the Plaintiff that she was "not a fit for this role."

39. Plaintiff was replaced by a Black employee already employed by MUSC-Orangeburg, despite its publicly stated effort to conduct a national search for candidates.

40. Defendant MUHA's later-proffered reasons in June for terminating the Plaintiff---that her workplace conduct demonstrated favoritism and generated fear among her subordinates; that she exceeded her authority; that she failed to communicate in a professional manner and failed to adequately supervise her subordinates—are a mere pretext for the motivating reason

for her termination, her race. If her behavior had been judged as of her April 12 termination date as so violative of MUSC Standards of Professional Behavior, Defendant Bennett would not have encouraged the Plaintiff to apply for other positions within the MUSC Health System.

41. Further inconsistencies abound in the fact that the Defendants now claim her termination date as June 13th, via the June 24th letter, ignoring the April 12th conversation in which Mr. Bennett specifically stated her discharge to be effective that day, all of which underscore the pretextual nature of their decision.

42. As a result of these unlawful violations by the Defendant MUHA, the Plaintiff has suffered lost wages and benefits, bonuses and other compensation and has incurred attorneys' fees and costs.

43. Further, because of Defendant MUHA's conduct, Plaintiff has suffered and endured humiliation, damage to her reputation, mental and emotional distress, loss of esteem in the community and pain and suffering.

44. Defendant MUHA's conduct toward the Plaintiff constitutes malicious, reckless and/or intentional violations of Plaintiff's rights under Title VII, thus entitling her to punitive damages.

## SECOND CAUSE OF ACTION
**Defamation**

45. Plaintiff re-alleges and incorporates each and every allegation set forth above as if repeated verbatim.

46. Acting within his scope of employment, Defendant Bennett published the email of May 1, 2024, to all MUSC-Orangeburg employees, staff and physicians associated with the Hospital. This email stated that the Plaintiff had "left her role as Chief Nursing Officer."

47. Based upon the fact that the Plaintiff had disappeared from the workplace as of April 12 when terminated by Defendant Bennett without advising anyone of any anticipated absence, along with the fact that no mention was made in the email of the Plaintiff's employment elsewhere or even her whereabouts, the email published by Defendant Bennett insinuated that the Plaintiff had been terminated for wrongful conduct or incompetence in her profession. Such an implication was false and defamatory, as it insinuated that the Plaintiff was unfit in her chosen profession.

48. Defendant Bennett's publication of the false and defamatory statement was unprivileged.

49. The false and defamatory statement is actionable *per se* because it imputes that the Plaintiff is unfit in her chosen profession as a professional Chief Nursing Officer.

50. The defamatory statement by the Defendant Bennett has been adopted by the Defendant MUHA and has caused and continues to cause economic and personal damage to the Plaintiff, including emotional distress, anxiety, embarrassment, humiliation and injury to her reputation and standing in the community.

51. The defamation of the Plaintiff was intentional, wanton and willful, thus entitling Plaintiff to punitive damages.

### THIRD CAUSE OF ACTION
### South Carolina Payment of Wages Act

52. Plaintiff re-alleges and incorporates each and every allegation set forth above as if repeated verbatim.

53. Defendant MUHA is an employer as defined by the South Carolina Payment of Wages Act (SCPWA), S.C. Code Ann. §41-10-10(1).

54. Pursuant to the SCPWA, Defendant MUHA was required to pay all wages due to the Plaintiff at the time and place designated by it under Section 41-10-30. For purposes of the SCPWA, "wages" includes not only salary, but also all bonuses earned by the Plaintiff.

55. During her employment and within forty-eight hours of the time of separation from employment or the next regular payday not exceeding thirty days, Defendant MUHA failed to pay the Plaintiff bonuses which were due and owing to her, according to Section 41-10-40 and Section 41-10-50.

56. Defendant MUHA's failure to pay the Plaintiff all bonuses due to her was willful and without justification. Its failure to do so was not based upon any legitimate, good faith dispute over the amount of wages due.

57. Pursuant to Section 41-10-80(C), Plaintiff is entitled to recover an amount equal to three times the full amount of her unpaid wage bonuses, plus costs and attorney's fees.

## DEMAND FOR JURY TRIAL

Plaintiff demands a jury trial for all matters triable to a jury.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff respectfully prays that this Court enter judgment for her, and against Defendants as follows:

a. All relief available under Title VII, including an award of damages including lost back wages, lost future wages/front pay, lost income and benefits, expenses associated with finding other employment and prejudgment interest;

b. An award of damages for the emotional distress suffered by the Plaintiff;

c. An award of all attorney's fees and costs incurred by the Plaintiff in bringing this action;

d. An award of all types of damages awardable to Plaintiff based upon Defendants' defamation of her, including an award of punitive damages against the Defendant Bennett;

e. An award of treble damages pursuant to the SCWPA; and

f. All such further relief as the Court deems just and equitable.

**GIBBS & HOLMES**

/s/ Timothy O. Lewis

Allan R. Holmes, Fed. ID No. 1925
Cheryl H. Ledbetter, Fed. ID No. 11446
Timothy O. Lewis, Fed. ID No. 9864
171 Church Street, Suite 110
Charleston, South Carolina 29401
Phone: 843-722-0033
Fax: 843-722-0114
aholmes@gibbs-holmes.com
cledbetter@gibbs-holmes.com
timolewis@gibbs-holmes.com

**ATTORNEYS FOR PLAINTIFF**

September 8, 2025